## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:09-cv-361 |
| vs. | ) ) | |
| PAWEL P. DYNKOWSKI, et al., | ) ) | |
| Defendants. | ) ) | |

## OBJECTIONS AND RESPONSES OF DEFENDANT JOSEPH MANGIAPANE JR.'S TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS

Pursuant to the requirements of Fed. R. Civ. P. 26 and 36, Defendant Joseph Mangiapane, Jr. ("Defendant" or "Mangiapane") hereby responds to and objects to Plaintiff's Requests for Admissions (collectively, "Requests") as follows:

**Request for Admission No. 1:** Admit that in the period from January 1, 2006 to December 31, 2007, you were employed as a registered representative at AIS.

**Response:** Defendant denies this Request. However, after making a diligent effort to identify and collect all relevant records for the period set forth in the Request, Defendant is able to admit that he was an independent contractor contracted by AIS from August of 2005 through March of 2007, and that he served as an option principal from August of 2005 through July of 2006. Thereafter, he resigned all positions with AIS.

**Request for Admission No. 2:** Admit that between January 1, 2006 to December 31, 2007 you owned approximately 25% of AIS.

**Response:** Defendant denies this Request. However, after making a diligent effort to

1

identify and collect all relevant records for the period set forth in the Request, Defendant is able to admit that he negotiated to purchase AIS from Marc Nichols on a staggered basis, 20% initially and 80% upon completion of the Continuing Membership Application ("CMA") requirements imposed by FINRA pursuant to NASD Rules requiring that a CMA be filed in the event of a change in ownership of AIS. Defendant does not recall the date of the purchase agreement with Mr. Nichols. AIS never cleared CMA. In November of 2006, Marc Riviello purchased Defendant's interest in AIS pursuant to a stock purchase agreement.

**Request for Admission No. 3:** Admit that between January 1, 2006 to December 31, 2007 Marc J. Riviello was AIS's compliance officer.

**Response:** Defendant denies this Request and objects to this request on the ground that it is vague and ambiguous as to the term "compliance officer." However, after making a diligent effort to identify and collect all relevant records for the period set forth in the Request, Defendant, if interpreting the term "compliance officer" as a Series 24 Licensed individual in charge of AIS's daily compliance with FINRA and SEC rules and regulations, is able to admit that from August of 2005 through March of 2007, Marc J. Riviello was AIS's compliance officer. Defendant further objects to the remaining dates based upon lack of personal knowledge, because he had terminated his relationship with AIS after March of 2007. After reasonable inquiry, Defendant is without sufficient information to admit or deny that Marc J. Riviello was AIS's compliance officer after March of 2007 because he does not have access to AIS's corporate or employee records, nor is he in communication with Marc J. Riviello.

**Request for Admission No. 4:** Admit that as AIS's compliance officer, Marc J. Riviello was responsible for signing all account opening documents and all order tickets.

**Response:**   Defendant objects to this Request as overly broad and unduly burdensome in that it purports to encompass an unidentified time period and Defendant lacks any personal knowledge beyond his engagement with AIS from August 2005 through March of 2007. However, after making a diligent effort to identify and collect all relevant records for the period set forth in the Request, Defendant is able to admit that from August of 2005 through March of 2007, to the best of Defendant's knowledge and belief Marc J. Riviello was responsible for signing all account opening documents and all order tickets. After reasonable inquiry, Defendant is without sufficient information to admit or deny that Marc J. Riviello was AIS's compliance officer after March of 2007, because he does not have access to AIS's corporate or employee records, nor is he in communication with Marc J. Riviello.

**Request for Admission No. 5:** Admit that between January 1, 2006 and December 31, 2007 you had authority to pay commissions to yourself from AIS's bank account.

**Response:** Defendant denies this Request. However, after making a diligent effort to identify and collect all relevant records for the period set forth in the Request, Defendant is able to admit that he was a signer on the AIS bank account during his engagement with AIS from August of 2005 through March of 2007.   Defendant further denies that he had authority to write commission checks, that he did not ever write commission checks and that he had access to commission blotters.

**Request for Admission No. 6:** Admit that you were from January 1, 2006 to December 31, 2007 a "control person" of AIS within the meaning of Section 20(a) of the Securities Exchange Act of 1934.

**Response:**   Defendant denies this Request and objects to this Request on the ground that it

3

represents an improper request for admission as it calls for a legal conclusion.

**Request for Admission No. 7:** Admit that no registration statement was in effect as to any securities issued by Asia Global during the period of January 1, 2006 through December 31, 2007.

**Response:** Defendant denies this Request and further objects to this Request as vague and ambiguous as to the terms "registration statement" and "in effect". Further, Defendant objects to this request in that it calls for a legal conclusion. Defendant has never been employed by Asia Global therefore lacks personal knowledge regarding any securities statements by Asia Global during the stated period. However, a recent search of the SEC's Edgar system indicates that Asia Global filed four S-8 registration statements with the SEC during the period of January 1, 2006 through December 31, 2007.

**Request for Admission No. 8:** Admit that in August 2006 through February 2007 you were aware that no registration statement was then in effect as to Asia Global's securities.

**Response:** Defendant denies this Request and further objects to this Request as vague and ambiguous as to the terms "registration statement" and "in effect". Further, Defendant objects to this request in that it calls for a legal conclusion. However, a recent search of the SEC's Edgar system indicates that Asia Global filed two S-8 registration statements with the SEC during the period of August 2006 through February 2007.

**Request for Admission No. 9:** Admit that in the spring of 2006 you met with Michael Mak, the Chief Executive Officer of Asia Global, at AIS's offices in Irvine, California.

**Response:** Defendant objects to this Request as overly broad, vague, compound and unduly burdensome in that it purports to encompass an unspecified time period. However, after making a diligent effort to identify and collect all relevant records for the period set forth in the

Request, Defendant is able to admit that he had a meeting with Michael Mak, but cannot recall the specific date. Admit that to the best of Defendant's knowledge and belief, Michael Mak was the chief executive officer of Asia Global at the time of the meeting and that such meeting took place at AIS's offices in Irvine, California. Defendant also recalls that Fletcher Robbe, Asia Global's legal counsel set up the meeting and that Mr. Robbe was present at the meeting.

**Request for Admission No. 10:** Admit that, during this spring 2006 meeting and otherwise, Michael Mak discussed with you the creation of certain trading accounts at AIS that would ostensibly be held by Chinese nationals living in Hong Kong but that others would control (the "Nominee Accounts").

**Response:** Defendant objects to this Request as overly broad, vague, compound and unduly burdensome in that it purports to encompass an unspecified time period and objects to the term "otherwise".

**Request for Admission No. 11:** Admit that you created or caused to be created trading accounts at AIS in the names off the following individuals:

a. Chi Wai Bebe Ng

b. Ching Kwok Leung

c. Chu Ming Terrence Wu

d. Choi Mei Mak

e. Chung Kling Chia

f. Hei Man Law

g. Ho Chun Man

h. Ho Ming Wong

i. Ka Shun Yau

j. Lee Ka Chun

k. Iiu Yin Ping

1. Mei Ling Fung

m. Mei Wah Chung

n. Pak Ming Leung

o. Yuen Yee Li

**Response:** Defendant denies this Request. However, after making a diligent effort to identify and collect all relevant records for the period set forth in the Request, Defendant is unable to recall ever having signed any new account forms for the persons listed above as a registered representative or general principal of AIS. Upon knowledge and belief, Defendant believes Marc Riviello signed new account forms in these capacities. Defendant admits he may have signed one or more new account forms as an options principal at AIS; however, he does not recall having done so, or if of these individuals ever traded options.

**Request for Admission No. 12:** Admit that you helped to facilitate the following transfers of Asia Global stock to the Nominee Accounts:

a. 7.75 million shares in August 2006,

b. 25 million shares in October-November 2006, and

c. 26.5 million shares in January/February 2007 (collectively, "the 2006-2007 Shares").

**Response:** Defendant denies this Request and objects to this Request on the ground that it represents an improper request for admission as it calls for a legal conclusion and the term "helped

to facilitate".

**Request for Admission No. 13:** Admit that, although the 2006-2007 Shares were purportedly registered on SEC Form S-8, you knew that the Nominee Account holders had not rendered any bona fide services to Asia Global.

**Response:** Defendant denies this Request and objects to this Request on the ground that it is vague, compound and incapable of being admitted or denied, particularly as to the term "purportedly registered." Further, the Request is argumentative. However, after making a diligent effort to identify and collect all relevant records for the period set forth in the Request, Defendant is able to admit he obtained written consulting agreements from Asia Global outlining each individuals services for Asia Global.

**Request for Admission No. 14:** Admit that you knew that the purpose of the transfers of the 2006-2007 Shares was to engage in a public distribution of securities as part of a scheme to manipulate the price and volume of Asia Global's stock.

**Response:** Defendant denies this Request.

**Request for Admission No. 15:** Admit that in August and September 2006 Pavel Dynkowski and others began to engage in manipulative trading of Asia Global securities using wash sales and matched orders.

**Response:** Defendant denies this Request and objects to this Request on the ground that it represents an improper request for admission as it calls for a legal conclusion. Further, Defendant lacks any personal knowledge of any manipulative trading of Asia Global Securities using wash sales and matched orders.

**Request for Admission No. 16:** Admit that Asia Global's stock price was approximately

11.5 cents per share at the close of trading on August 9, 2006.

**Response:** Defendant denies this Request, in that he did not have contemporary knowledge of the prices at which Asia Global's shares traded on August 9, 2006. However, after making a diligent effort to identify and collect all relevant records for the period set forth in the Request, Defendant is able to admit that according to Google Finance, on August 9, 2006, Asia Global's stock price closed at 12 cents per share, with a volume of 304,070 shares traded.

**Request for Admission No. 17:** Admit that Asia Global's stock traded at an intraday high of 41 cents per share on August 25, 2006.

**Response:** Defendant denies this Request, in that he did not have contemporary knowledge of the prices at which Asia Global's shares traded on August 25, 2006. However, after making a diligent effort to identify and collect all relevant records for the period set forth in the Request, Defendant is able to admit that according to Google Finance, on August 25, 2006, Asia Global's stock price opened at 32 cents per share, that the high of the day was 41 cents per share, that the low price of the day was 28 cents per share, and that the stock closed at 35 cents per share on volume of 2,086,267 shares traded.

**Request for Admission No. 18:** Admit that Pawel Dynkowski and Matthew Brown controlled the Nominee accounts and the 2006-2007 Shares therein.

**Response:**  Defendant denies this Request. Further, Defendant lacks any personal knowledge of whether Pawel Dynkowski and Matthew Brown controlled the Nominee Accounts and the 2006 – 2007 Shares therein.

**Request for Admission No. 19:** Admit that, starting in August 2006, you were aware that that Pavel Dynkowski and Matthew Brown controlled the Nominee Accounts and the 2006-2007

Shares therein.

**Response:** Defendant denies this Request. Further, Defendant lacks any personal knowledge of whether Pawel Dynkowski and Matthew Brown controlled the Nominee Accounts and the 2006 – 2007 Shares therein.

**Request for Admission No. 20:** Admit that on September 1, 2006, Asia Global issued a press release stating that its net income for the second quarter of 2006 had increased by 370% compared to its net income for the second quarter of 2005 and that its profits for July 2006 were 745% greater than its profits for July 2005.

**Response:** Defendant denies this Request as he has no personal knowledge of whether the press release was issued by Asia Global or some other person or entity.

**Request for Admission No. 21:** Admit that Asia Global's September 1, 2006 press release was false.

**Response:**   Defendant denies this Request as he has no personal knowledge of whether Asia Global's September 1, 2006 press release was false.

**Request for Admission No. 22:** Admit that on February 6, 2007, Asia Global issued a press release stating that its subsidiary had received a license to produce 104 episodes of "Who Wants to be a Millionaire" in China.

**Response:** Defendant denies this Request as he has no personal knowledge of whether the press release was issued by Asia Global or some other person or entity. Further, Defendant denies having any first-hand knowledge of this press release.

**Request for Admission No. 23:** Admit that Asia Global's February 6, 2007 press release was false.

**Response:** Defendant denies this Request as he has no personal knowledge of whether Asia Global's February 6, 2007 press release was false.

**Request for Admission No. 24:** Admit that you knew that Asia Global's September 1, 2006 press release was false when it was issued.

**Response:** Defendant denies this Request as he has no personal knowledge of whether Asia Global's September 1, 2006 press release was false.

**Request for Admission No. 25:** Admit that you knew that Asia Global's February 6, 2007 press release was false when it was issued.

**Response:** Defendant denies this Request as he has no personal knowledge of whether Asia Global's February 6, 2007 press release was false.

**Request for Admission No. 26:** Admit that you received orders from Pawel Dynkowski to sell the 2006-2007 Shares held in the nominee accounts.

**Response:** Defendant denies this Request.

**Request for Admission No. 27:** Admit that you personally executed these sales of the 2006-2007 Shares as a registered representative at AIS.

**Response:** Defendant denies this Request. Further, Defendant does not recall ever having executing any orders relative to any of the 2006 – 2007 Shares.

**Request for Admission No. 28:** Admit that no valid exemption from registration applied to these sales of the 2006-2007 Shares that you executed.

**Response:** Defendant denies this Request and objects to this Request as it calls for a legal conclusion. Further, Defendant does not recall ever having executing any orders relative to any of the 2006 – 2007 Shares.

**Request for Admission No. 29:** Admit that you performed no reasonable enquiry to determine the registration status of the 2006-2007 Shares.

**Response:** Defendant denies this Request. Further, Defendant did perform a "reasonable enquiry to determine the registration status of the 2006 – 2007 Shares."   Additionally, Defendant denies he had any obligation to determine the registration status of the 2006 – 2007 Shares.

**Request for Admission No. 30:** Admit that no one associated with AIS performed a reasonable enquiry to determine the registration status of the 2006-2007 Shares.

**Response:** Defendant denies this Request. Further, Defendant did perform a "reasonable enquiry to determine the registration status of the 2006 – 2007 Shares."   After reasonable inquiry, Defendant is without sufficient information to admit or deny whether any other person associated with AIS performed any other enquiry to determine the registration status of the 2006 – 2007 Shares.

**Request for Admission No. 31:** Admit that, because neither you nor anyone else associated with AIS performed a reasonable enquiry to determine the registration status of the 2006-2007 shares, the "broker's exemption" in Section 4(a)(4) of the Securities Act of 1933 did not apply to the sales of the 2006-2007 Shares that you executed.

**Response:** Defendant denies this Request and objects to this Request on the ground that it represents an improper request for admission as it calls for a legal conclusion.

**Request for Admission No. 32:** Admit that AIS received more than $150,000 in commissions from sales of the 2006-2007 Shares.

**Response:** Defendant denies this Request. After reasonable inquiry, I am without sufficient information to admit or deny whether AIS received $150,000 or any other amount of

commissions from sales of the 2006 – 2007 Shares.

**Request for Admission No. 33:** Admit that you personally received more than $44,000 in commissions from sales of the 2006 - 2007 Shares.

**Response:** Defendant denies this Request. After reasonable inquiry, Defendant admits to receiving commissions during the time period; however, is without sufficient information to admit or deny how much of the commissions received related to Asia Global, if any. This information would be found on AIS's blotters, which the Defendant does not possess. Further, if Defendant did receive any such commissions, such payment would have been inadvertent and contrary to his instructions to Marc Riviello.

**Request for Admission No. 34:** Admit that in February 2007 you caused an IRS Form 1099 to be issued by AIS to a company called Vetikal Group.

**Response:** Defendant denies this Request.

**Request for Admission No. 35:** Admit that no registration statement was in effect as to any securities issued by GH3 during the period of January 1, 2006 through December 31, 2007.

**Response:** Defendant denies this Request and further objects to this Request as vague and ambiguous as to the terms "registration statement" and "in effect". Further, Defendant objects to this request in that it calls for a legal conclusion. Defendant has never been employed by GHS therefore lacks personal knowledge regarding any securities statements by GH3 during the stated period.

**Request for Admission No. 36:** Admit that in December 2006 you were aware that no registration statement was then in effect as to GH3's securities.

**Response:** Defendant denies this Request and further objects to this Request as vague

and ambiguous as to the terms "registration statement" and "in effect". Further, Defendant objects to this request in that it calls for a legal conclusion. Defendant has never been employed by GHS therefore lacks personal knowledge regarding any securities statements by GH3 during the stated period.

**Request for Admission No. 37:** Admit that between December 4 and 12, 2006, GH3 caused to be transferred approximately 312 million shares of GH3 securities to High Plains Enterprises.

**Response:** Defendant denies this Request. Defendant has never been employed by GHS nor does he have any knowledge of High Plains Enterprises; therefore, Defendant has no knowledge of any transfers of GH3 stock to High Plains Enterprises or any other person or entity.

**Request for Admission No. 38:** Admit that High Plains Enterprises subsequently transferred these GH3 securities to accounts held in the name of Jacob Canceli at Bishop Rosen & Co. and Spartan Securities Group.

**Response:** Defendant denies this Request. Defendant has never been employed by GHS nor does he have any knowledge of High Plains Enterprises; therefore, Defendant has no knowledge of any transfers of GH3 stock to or from High Plains Enterprises or any other person or entity.

**Request for Admission No. 39:** Admit that Pawel Dynkowski controlled the Canceli accounts at Bishop Rosen & Co. and Spartan Securities Group.

**Response:** Defendant denies this Request. Defendant has no knowledge as to whether Pawel Dynkowski controlled the Canceli accounts at Bishop Rosen & Co. and Spartan Securities Group.

**Request for Admission No. 40:** Admit that between December 4 and 13, 2006, Pawel Dynkowski and others engaged in manipulative trading of GH3 securities using wash sales and matched orders.

**Response:** Defendant denies this Request and objects to this Request on the ground that it represents an improper request for admission as it calls for a legal conclusion. Further, Defendant lacks any personal knowledge of any manipulative trading of GHS securities using wash sales and matched orders.

**Request for Admission No. 41:** Admit that during the December 4 to 13, 2006, time period you were aware that Pawel Dynkowski was manipulatively trading GH3's securities.

**Response:** Defendant denies this Request and objects to this Request on the ground that it represents an improper request for admission as it calls for a legal conclusion. Further, Defendant lacks any personal knowledge of any manipulative trading of GHS securities by Pawel Dynkowski.

**Request for Admission No. 42:** Admit that on December 7, 2006, GH3 issued a press release stating that its 2005 revenues exceeded $2.1 million.

**Response:** Defendant denies this Request as he has no personal knowledge of whether the press release was issued by GH3 or some other person or entity.

**Request for Admission No. 43:** Admit that on December 8, 2006, GH3 issued a press release stating that its 2006 revenues exceeded $3 million.

**Response:** Defendant denies this Request as he has no personal knowledge of whether the press release was issued by GH3 or some other person or entity.

**Request for Admission No. 44:** Admit that the press release issued by GH3 on December

7, 2006 was false.

**Response:** Defendant denies this Request as he has no personal knowledge of whether GH3's December 7, 2006 press release was false.

**Request for Admission No. 45:** Admit that you knew the December 7, 2006 press release was false on the day it was issued.

**Response:** Defendant denies this Request as he has no personal knowledge of whether GH3's December 7, 2006 press release was false on the day it was issued.

**Request for Admission No. 46:** Admit that the press release issued by GH3 on December 8, 2006 was false.

**Response:** Defendant denies this Request as he has no personal knowledge of whether GH3's December 8, 2006 press release was false.

**Request for Admission No. 47:** Admit that you knew the December 8, 2006 press release was false on the day it was issued.

**Response:** Defendant denies this Request as he has no personal knowledge of whether GH3's December 7, 2006 press release was false on the day it was issued.

**Request for Admission No. 48:** Admit that Dynkowski sold the GH3 shares in the Canceli accounts at Bishop Rosen & Co. and Spartan Securities Group while Dynkowski was manipulating the stock.

**Response:** Defendant denies this Request and objects to this Request on the ground that it represents an improper request for admission as it calls for a legal conclusion. Further, Defendant lacks any personal knowledge of any manipulative trading or control over any of GHS securities by Pawel Dynkowski.

**Request for Admission No. 49:** Admit that Dynkowski generated more than $747,000 in proceeds from selling the GH3 shares.

**Response:** Defendant denies this Request as Defendant lacks any personal knowledge of any proceeds received by Dynkowski from the sale of GH3 shares.

**Request for Admission No. 50:** Admit that you arranged for Canceli to transfer approximately $253,000 of these proceeds to an account held in the name of Westmark Capital Group, Inc., an entity controlled by Marc Riviello.

**Response:** Defendant denies this Request. Defendant did not arrange for Canceli to transfer approximately $253,000 of proceeds to an account held in the name of Westmark Capital Group, Inc. or any other person or entity. Upon information and belief derived from online public records, Defendant has located corporate records indicating Marc Riviello served as Westmark Capital Group, Inc.'s registered agent and as a corporate officer.

**Request for Admission No. 51:** Admit that you knew that the $250,000 represented Dynkowski's share of the proceeds of selling GH3 stock from the Canceli accounts.

**Response:** Defendant denies this Request as Defendant lacks any personal knowledge of any proceeds received by Dynkowski from the sale of GH3 shares.

**Request for Admission No. 52:** Admit that you arranged for Riviello to bring approximately $220,000 of the $253,000 to you in cash.

**Response:** Defendant denies this Request.

**Request for Admission No. 53:** Admit that you kept more than $40,000 of this money for yourself.

**Response:** Defendant denies this Request.

**Request for Admission No. 54:** Admit that you passed the remainder of the $220,000 to Matthew Brown, knowing that he intended to send the vast majority of it to Dynkowski.

**Response:** Defendant denies this Request.

**Request for Admission No. 55:** Admit that you were the named account executive for the trading account at held in the name of Chi Wai Bebe Ng.

**Response:** Defendant denies this Request.

**Request for Admission No. 56:** Admit that you opened or caused to be opened a trading account held in the name of Chi Wai Bebe Ng.

**Response:** Defendant denies this Request.

**Request for Admission No. 57:** Admit that you have never communicated in any way with Chi Wai Bebe Ng.

**Response:** Defendant denies this Request as Defendant lacks any personal knowledge or recollection of any communication with Chi Wai Bebe Ng.

**Request for Admission No. 58:** Admit that persons other than Chi Wai Bebe Ng directed the trading that occurred in the account held in the name of Chi Wai Bebe Ng.

**Response:** Defendant denies this Request as Defendant lacks any personal knowledge of whether persons other than Chi Wai Bebe Ng directed the trading that occurred in the account held in the name of Chi Wai Bebe Ng.

**Request for Admission No. 59:** Admit that the account records attached hereto as Exhibit A are genuine, authentic and "records of regularly conducted activity" under Federal Rule of Evidence 803(6)(A)-(C).

**Response:** Defendant denies this Request and objects to this Request on the ground that it

represents an improper request for admission as it calls for a legal conclusion. Further, Defendant lacks any personal knowledge of whether the account records attached hereto as Exhibit A are genuine, authentic and "records of regularly conducted activity" under Federal Rule of Evidence 803(6)(A)-(C).

**Request for Admission No. 60:** Admit that the account held in the name of Chi Wai Bebe Ng purchased and sold Asia Global's securities.

**Response:** Defendant denies this Request as Defendant lacks any personal knowledge of whether the account held in the name of Chi Wai Bebe Ng purchased and sold Asia Global's securities.

**Request for Admission No. 61:** Admit that you were the named account executive for the trading account held in the name of Chi Wai Bebe Ng

**Response:** Defendant denies this Request. Defendant never consented to serving as the account executive for Chi Wai Bebe Ng, although Defendant believes Marc Riviello might have briefly caused his name to be associated with this account without Defendant's knowledge or consent.

**Request for Admission No. 62:** Admit that you opened of caused to be opened a trading account held in the naive of Choi Mei Mak.

**Response:** Defendant denies this Request.

**Request for Admission No. 63:** Admit that you have never communicated in any way with Choi Mei Mak.

**Response:** Defendant denies this Request as Defendant lacks any personal knowledge or recollection of any communication with Choi Mei Mak.

**Request for Admission No. 64:** Admit that persons other than Choi Mei Mak directed the trading that occurred in the account held in the name of Choi Mei Mak.

**Response:** Defendant denies this Request as Defendant lacks any personal knowledge of whether persons other than Choi Mei Mak directed the trading that occurred in the account held in the name of Choi Mei Mak.

**Request for Admission No. 65:** Admit that the account records attached hereto as Exhibit B are genuine, authentic and "records of regularly conducted activity" under Federal Rule of Evidence 803(C)(A)-(C).

**Response:** Defendant denies this Request and objects to this Request on the ground that it represents an improper request for admission as it calls for a legal conclusion. Further, Defendant lacks any personal knowledge of whether the account records attached hereto as Exhibit B are genuine, authentic and "records of regularly conducted activity" under Federal Rule of Evidence 803(6)(A)-(C).

**Request for Admission No. 66:** Admit that the account held in the name of Choi Mei Mak purchased and sold Asia Global's securities.

**Response:** Defendant denies this Request as Defendant lacks any personal knowledge of whether the account held in the name of Choi Mei Mak purchased and sold Asia Global's securities.

**Request for Admission No. 67:** Admit that you were the named account executive for the trading account held in the name of Hei Man Law.

**Response:** Defendant denies this Request. Defendant never consented to serving as the account executive for Hei Man Law, although Defendant believes Marc Riviello might have

19

briefly caused his name to be associated with this account without Defendant's knowledge or consent.

**Request for Admission No. 68:** Admit that you opened or caused to be opened a trading account held in the name of Hei Man Law.

**Response:** Defendant denies this Request.

**Request for Admission No. 69:** Admit that you have never communicated in any way with Hei Man Law.

**Response:** Defendant denies this Request as Defendant lacks any personal knowledge or recollection of any communication with Hei Man Law.

**Request for Admission No. 70:** Admit that persons other than Hei Man Law directed the trading that occurred in the account held in the name of Hei Man Law.

**Response:** Defendant denies this Request as Defendant lacks any personal knowledge of whether persons other than Hei Man Law directed the trading that occurred in the account held in the name of Hei Man Law.

**Request for Admission No. 71:** Admit that the account records attached hereto as Exhibit C are genuine, authentic and "records of regularly conducted activity" under Federal Rule of evidence 803(C)(A)-(C).

**Response:** Defendant denies this Request and objects to this Request on the ground that it represents an improper request for admission as it calls for a legal conclusion. Further, Defendant lacks any personal knowledge of whether the account records attached hereto as Exhibit C are genuine, authentic and "records of regularly conducted activity" under Federal Rule of Evidence 803(6)(A)-(C).

**Request for Admission No. 72:**    Admit that the account held in the name of Hei Man Law purchased and sold Asia Global's securities.

**Response:**    Defendant denies this Request as Defendant lacks any personal knowledge of whether the account held in the name of Hei Man Law purchased and sold Asia Global's securities.

**Request for Admission No. 73:** Admit that you were the named account executive for the trading account held in the name of Ka Shun Yau.

**Response:**    Defendant denies this Request. Defendant never consented to serving as the account executive for Ka Shun Yau, although Defendant believes Marc Riviello might have briefly caused his name to be associated with this account without Defendant's knowledge or consent.

**Request for Admission No. 74:** Admit that you opened or caused to be opened a trading account held in the name of Ka Shun Yau.

**Response:**    Defendant denies this Request.

**Request for Admission No. 75:** Admit that you have never communicated in any way with Ka Shun Yau.

**Response:**    Defendant denies this Request as Defendant lacks any personal knowledge or recollection of any communication with Ka Shun Yau.

**Request for Admission No. 76:**    Admit that persons other than Ka Shun Yau directed the trading that occurred in the account held in the name of Ka Shun Yau.

**Response:**    Defendant denies this Request as Defendant lacks any personal knowledge of whether persons other than Ka Shun Yau directed the trading that occurred in the account held in the name of Ka Shun Yau.

**Request for Admission No. 77:** Admit that the account records attached hereto as Exhibit D are genuine, authentic and "records of regularly conducted activity" under Federal Rule of Evidence 803(6)(A)-(C).

**Response:** Defendant denies this Request and objects to this Request on the ground that it represents an improper request for admission as it calls for a legal conclusion. Further, Defendant lacks any personal knowledge of whether the account records attached hereto as Exhibit C are genuine, authentic and "records of regularly conducted activity" under Federal Rule of Evidence 803(6)(A)-(C).

**Request for Admission No. 78:** Admit that the account held in the name of Ka Shun Yau purchased and sold Asia Global's securities.

**Response:** Defendant denies this Request as Defendant lacks any personal knowledge of whether the account held in the name of Ka Shun Yau purchased and sold Asia Global's securities.

DATED this 22nd day of May, 2017.


**DEMINT LAW, PLLC**

Anthony N. DeMint, Esq.
DeMint Law, PLLC
3753 Howard Hughes Pkwy, #200-314
Las Vegas, NV 89169
Telephone: (702) 586-6436
Email: anthony@demintlaw.com

Attorney for Joseph Mangiapane, Jr.
Pro Hac Vice

**LIGUORI AND MORRIS**

James Liguori, Esq.
Delaware State Bar No. 415
46 The Green
Dover, DE 19901
Telephone: (302) 678-9900
Email: jliguori@lmylaw.com

Attorney for Joseph Mangiapane, Jr.